# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| United States of America<br>v.<br><br>Gregory Wayne Ferguson Jr.<br><br>_Defendant(s)_ | )<br>)<br>) Case No.<br>)         6:21-mj-00066-MK<br>)<br>)<br>) |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   January 26 and February 4, 2021   in the county of   Douglas   in the
_____ District of   Oregon  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) | Distribution of 50 grams or more of methamphetamine |
| Title 26 U.S.C. § 5861(c) | Possessing a firearm made in violation of the National Firearms Act |

This criminal complaint is based on these facts:
See the attached affidavit

☑ Continued on the attached sheet.

/s/ Noah Slackman, Per Rule 4.1
_Complainant's signature_

Noah Slackman, ATF Special Agent
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  10:17am  a.m./p.m.

Date:  March 15, 2021

_Judge's signature_

City and state:   Eugene, Oregon   Mustafa T. Kasubhai, U.S. Magistrate Judge
_Printed name and title_

DISTRICT OF OREGON, ss:          AFFIDAVIT OF **NOAH SLACKMAN**

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, **Noah Slackman**, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with Bureau of Alcohol, Tobacco, Firearms and Explosives **(**ATF**)** and have been since 2005.  My current assignment is the Seattle Field Division, Eugene**,** Field Office.  During this time, I have conducted and participated in numerous investigations concerning the illegal possession of firearms, federal controlled substances, and the commission of violent crimes, to include armed robberies of cocaine, which are also known as home invasion robbery investigations, or "stash house" robbery investigations.  During my employment as an ATF Special Agent, I have received specialized training regarding, and have personally participated in, various types of investigative activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace devices; (g) the court-authorized interception of both wire and electronic communications.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Jimmy Lee PRATER Jr (hereinafter known as "PRATER"), for the crime of distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii),  and for Gregory Wayne FERGUSON Jr (hereinafter known as "FERGUSON"), for the crimes of distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1),

(b)(1)(A)(viii) and possession of a firearm made in violation of the National Firearms Act, in violation of 26 U.S.C. § 5861(c)

## Applicable Law

3.  21 U.S.C. § 841(a)(1) provides that it is prohibited for any person to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

4.  26 U.S.C §§ 5861(c) provides that it is prohibited to: to receive or possess a firearm made in violation of the National Firearms Act  For the purposes of § 5861, a firearm is defined in §5845, and includes a silencer, a machine gun and a rifle having a barrel of 16 inches or less.

## Statement of Probable Cause

5.  On January 26, 2021, the affiant, acting in an undercover capacity and referred to hereafter as UC/SA, went to Gregory FERGUSON's residence in Cottage Grove, Oregon.  The UC/SA met with Jimmy PRATER, who resided in a trailer on the property, and discussed purchasing methamphetamine from him.  The UC/SA advised he would like to purchase a "QP" (quarter-pound) of methamphetamine and the UC/SA and PRATER agreed the price would be $1300.00.  PRATER removed a container from a cabinet, removed a white crystal substance from it, and placed it in a plastic cup on a scale.  The UC/SA observed the scale read 120 grams and the UC/SA observed an additional ½ to 1 pound of crystal substance remaining in the container.  The UC/SA provided PRATER with $1300.00 in pre-recorded ATF funds in exchange for the approximately four ounces of methamphetamine.

6.	The UC/SA then engaged in conversation with PRATER regarding firearms and PRATER told the UC/SA "We make guns", "there's no ballistics", and "we mill them ourselves". When the UC/SA asked about the price of purchasing a firearm, PRATER responded, "We cut deals" and "800 bucks" and described firearm accessories. When the UC/SA expressed interest in purchasing a firearm, PRATER indicated he needed to ascertain if another individual was available and said, "I'll go grab one I'll show you". PRATER also said "we have AR 15 and AR 10 platforms" and "we're also working on some fully automatics" for "25".

7.	PRATER also stated "we" have and make "sears". When the UC/SA asked what "sears" are, PRATER explained it converts a semi-automatic firearm to a fully automatic firearm (machine gun). Based on my knowledge of this investigation, I am aware the other individual PRATER was referring to was FERGUSON.

8.	The UC/SA entered FERGUSON's residence with PRATER and observed an individual the UC/SA immediately recognized as FERGUSON (and who later introduced himself as "Greg") walk from the second floor of the residence toward the first floor, holding a rifle. PRATER walked up the stairs and met FERGUSON, obtained the rifle from FERGUSON, and returned downstairs and handed the weapon to the UC/SA. The UC/SA observed the rifle had no make, model or serial number, and the UC/SA observed the rifle to be an AR style Privately Made Firearm (hereinafter known as 'PMF').

9.	FERGUSON explained to the UC/SA that every firearm sold in a retail store has been fired and all the ballistic information is retained, which is why he (FERGUSON) manufactures firearms. During this conversation, FERGUSON described the firearms he

produces are "ghost guns" and the firearms are capable of being suppressed.  I am aware a "ghost gun" refers to a PMF and the term "suppressor" refers to a silencer.  When the UC/SA asked if this particular firearm is "fully" (fully automatic), PRATER and FERGUSON replied in the negative, and FERGUSON said, "no but I can make it that way".  When the UC/SA asked about the short barrel on the rifle, FERGUSON explained how it was made for "close combat".  FERGUSON also explained how a fully automatic weapon would cost $25,000.  FERGUSON also explained the barrel of this firearm is "threaded" … "to put a can on it".  I am aware firearms are often manufactured in a way where the barrel is "threaded" to accept a suppressor and a "can" refers to a silencer.  The UC/SA paid $1100 at the time for the firearm, and agreed to pay $400 later.  FERGUSON also explained the firearm the UC/SA just purchased from him is a "ghost gun… has no serial numbers" and the firearm cannot be traced.  The UC/SA fired the firearm with FERGUSON.

      10. During the meeting, PRATER said he would be getting additional methamphetamine that day.  When the UC/SA asked how much is coming, PRATER replied "we're gonna try and get about 10 pounds or so".  PRATER then invited the UC/SA to participate by providing money and stated, "We're trying to get as much cash as we can…"  The UC/SA left FERGUSONS's premises.

      11. I requested a query of Gregory Wayne FERGUSON Jr and Jimmy Lee PRATER Jr be conducted through the Federal Licensing System (hereinafter known as "FLS") and National Firearms Registration and Transfer Record (hereinafter known as "NFRTR").  The FLS is a database that issues, renews and tracks licenses issued to firearm manufacturers, importers and dealers.  The NFRTR is the central registry of all National Firearms Act (NFA) firearms in

the United States that are not in possession or under the control of the United States Government such as SBRs, machine guns and silencers.  I received a response from an ATF Industry Operations Investigator that a search of the FLS and NFRTR databases did not return any results for FERGUSON Jr nor PRATER Jr.  Thus, FERGUSON and PRATER are not licensed to engage in the business of firearm manufacturing, importing or dealing.  In addition, as of February 25, 2021, FERGUSON Jr does not have any National Firearms Act (NFA) weapons registered weapons with ATF and he is not authorized to manufacture, possess or distribute them.

12. I observed the PMF the UC/SA had purchased from FERGUSON and again noticed there is no make, model or serial number on the rifle.  I measured the barrel of the rifle and learned it is approximately 11" long and the overall length is approximately 29" long.  I am aware that a short barrel rifle (SBR) is defined as a rifle with a barrel shorter than 16", or an overall length of less than 26".  I am aware that a SBR falls under the purview of the National Firearms Act and a SBR is a weapon that falls under the registration and transfer requirement of the National Firearms Act.

13. The Drug Enforcement Administration (DEA) analyzed the methamphetamine and concluded it was 108.3 grams of actual methamphetamine (+/- 6.7 grams).

14. On or about February 4, 2021, the UC/SA drove to the Premises in a UC vehicle for the purpose of purchasing an amount of methamphetamine and/or a PMF from PRATER and/or FERGUSON.  While at the Premises, the UC/SA began conversing with PRATER who was outside the Premises.  During the conversation with PRATER, the UC/SA said he wanted to pay FERGUSON the $400 owed for the PMF/short-barreled rifle and also wanted to purchase

methamphetamine. PRATER asked "how much" and if the UC/SA wanted a pound or quarter pound of (methamphetamine). When the UC/SA replied he wanted to purchase a "QP" (quarter-pound), PRATER answered that he would get it. The UC/SA followed PRATER upstairs and inside FERGUSON's bedroom where the UC/SA paid $400.00 in pre-recorded ATF funds to FERGUSON for the previously mentioned owed money.

15. FERGUSON and the UC/SA discuss building PMFs during this meeting, and PRATER explained he had to acquire more methamphetamine from his supplier then would later meet the UC/SA.

16. FERGUSON then asked PRATER "How much do you need?" and PRATER asked the UC/SA, "How much you got?" The UC/SA replied "I got enough for a QP" and PRATER asked FERGUSON "You got a quarter on you?" FERGUSON nodded and responded, "I think so". PRATER then told FERGUSON "get that" and FERGUSON walked into his bedroom. While FERGUSON was in his bedroom, the UC/SA asked PRATER about the 10 pounds of methamphetamine PRATER had previously told the UC/SA that he (PRATER) was expecting, and PRATER explained he sold it all and was attempting to obtain more.

17. PRATER then left the residence and shortly thereafter, the UC/SA discussed purchasing the methamphetamine directly from FERGUSON instead of PRATER due to the UC/SA previously purchasing the methamphetamine from PRATER. The UC/SA asked if "it's all the same" (if the methamphetamine from FERGUSON is also PRATER's and/or they distribute the methamphetamine together) and FERGUSON responded "pretty much". Regarding the methamphetamine, FERGUSON stated "When I have it, he has it… when he has it, I have it" and When I have it, you have it".

18.     The UC/SA and FERGUSON walked back inside the residence and walked upstairs to FERGUSON's bedroom.  FERGUSON walked into the bedroom closet and the UC/SA observed 4-5 firearms throughout the bedroom, including a shotgun, rifles and a pistol next to the bed.  FERGUSON exited the closet holding a zip lock baggie of white crystal substance and proceeded to weigh four ounces in one-ounce increments.  The UC/SA and FERGUSON agreed on the price of $1300.00 for the methamphetamine, and the UC/SA provided $1300.00 in pre-recorded ATF funds to FERGUSON.  FERGUSON implied that the UC/SA can return to purchase more, and the UC/SA agreed.

19.     The Drug Enforcement Administration (DEA) analyzed the methamphetamine and concluded it was 110 grams of actual methamphetamine  (+/- 7 grams).

## Conclusion

20.     Based on the foregoing, I have probable cause to believe, and I do believe that Jimmy Lee PRATER Jr and Gregory Wayne FERGUSON Jr committed the crimes described above.

21.     I therefore request that the Court issue a criminal complaint and arrest warrant for Jimmy Lee PRATER Jr and Gregory Wayne FERGUSON Jr.

22.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Jeffrey Sweet, and AUSA Sweet advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

**Request for Sealing**

23.    It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

/s/ Noah Slackman, Per rule 4.1
NOAH SLACKMAN
Special Agent, ATF

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __10:17am__ a.m/p.m. on __March 15, 2021__.

HONORABLE MUSTAFA T. KASUBHAI
United States Magistrate Judge