```
                                              Pages 1 - 15

              UNITED STATES DISTRICT COURT

            DISTRICT OF OREGON - EUGENE DIVISION

   Before the Honorable Mustafa T. Kasubhai, Magistrate Judge


   UNITED STATES OF AMERICA          NO. 6:21-mj-00066-MK-1

        vs.                          MARCH 17, 2021

   GREGORY WAYNE FERGUSON, JR.       1:48 P.M.

                Defendant.
   _____/


      OFFICIAL COURT TRANSCRIPT OF AUDIO-RECORDED PROCEEDINGS

      First Appearance - Video/Teleconference - FTR 1:48-2:06


   APPEARANCES:

        For the Plaintiff:

        JEFFREY S. SWEET
        United States Attorney's Office
        405 E. Eighth Avenue, Suite 2400
        Eugene, OR 97401
        541-465-6771; jeff.sweet@usdoj.gov



   Transcribed by Kelly Polvi, Official Court Reporter
       U.S. District Court - Eugene Division
       405 East 8th Ave, Ste. 2100, Eugene, OR, 97401
       541.431-4112; Kelly_Polvi@ord.uscourts.gov

     Re-written utilizing mechanical and digital stenography.
        Transcript produced via computer-aided translation.


   (APPEARANCES CONTINUED ON FOLLOWING PAGE:)
```

```
 1      APPEARANCES (CONTINUED):

 2      For the defendant:

 3           KURT DAVID HERMANSEN
             Oregon Federal Public Defender's Office
 4           859 Willamette Street, Suite 200
             Eugene, OR, 97401
 5           (541) 465-6937; kurt_hermansen@fd.org

 6


 7
        Also Present:
 8
             Nick Stranieri, Pretrial Services Officer
 9           Gregory Wayne Ferguson, Jr., Defendant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    WEDNESDAY, MARCH 17, 2021                            1:48 P.M.
 2                         P R O C E E D I N G S
 3                               ---oOo---
 4       COURTROOM DEPUTY:  Now is the time set for Magistrate
 5    Case Number 21-66, United States of America versus Gregory
 6    Wayne Ferguson, Jr., for initial appearance.
 7       THE COURT:  All right.
 8       Mr. Sweet, are you here on behalf of the government?
 9       MR. SWEET:  Yes, Your Honor.
10       THE COURT:  And Mr. Hermansen?
11       MR. HERMANSEN:  Yes, (indiscernible) now.  Yeah, I am
12    appearing for Mr. Ferguson for today's purposes only,
13    Your Honor, and then we will be finding him a CJA attorney
14    after today.
15       THE COURT:  All right.  Very good.  Appointed for the
16    limited purposes of today's appearance.
17       Mr. Ferguson, can you hear and see me on your screen?
18       THE DEFENDANT:  Yes, Your Honor.
19       THE COURT:  All right.  And before we proceed, do I have
20    your consent to conduct this hearing by video instead of in
21    person?
22       THE DEFENDANT:  Yes, Your Honor.
23       THE COURT:  Okay.  Thank you.
24       And Mr. Hermansen, are you in receipt of the criminal
25    complaint in this matter?
```

1   **MR. HERMANSEN:**  Yes, Your Honor; I have a copy of the
2   complaint, and I have reviewed it with Mr. Ferguson.
3       **THE COURT:**  Okay.  And Mr. Sweet --
4       **MR. HERMANSEN:**  Waive its reading.
5       **THE COURT:**  Okay.  Thank you.
6       And Mr. Sweet, are you asking that this remain sealed?
7       **MR. SWEET:**  No, Your Honor; I would ask that it be
8   unsealed, please.
9       **THE COURT:**  So ordered.  Thank you.
10      Mr. Ferguson.
11      **THE DEFENDANT:**  Yes, Your Honor.
12      **THE COURT:**  I want to make sure you understand the rights
13  available to you as a defendant in our criminal justice system.
14      You have the right to review the allegations against you.
15  The criminal complaint has been unsealed, so you'll have a
16  chance to review it directly.
17      Mr. Hermansen, I do want to make sure that Mr. Ferguson's
18  name is spelled correctly in the caption.
19      Is that correct?
20      **MR. HERMANSEN:**  I believe it is correct, Your Honor.
21      **THE COURT:**  All right.  Thank you.
22      And so, Mr. Ferguson, you also have the right to remain
23  silent.  You're not required to make any statements regarding
24  these charges.  If you make any statements to the prosecutor or
25  law enforcement, agent, or any person other than your lawyer,

1  those statements can be used against you in future court
2  proceedings.
3       You also have the right to a preliminary hearing in which
4  the government would be required to present evidence to
5  demonstrate that there's probable cause to believe that you
6  committed the charged offense.
7       Mr. Hermansen, how do you wish to proceed with respect to
8  the preliminary hearing?
9       **MR. HERMANSEN:**  Your Honor, we would request that time be
10  excluded and that the prelim be continued so that the CJA
11  attorney can decide whether to go forward with that or to waive
12  it.
13       **THE COURT:**  Okay.  I guess -- Mr. Sweet, do you have any
14  objection to allowing time to be extended for the defendant to
15  request a preliminary hearing, once a CJA attorney has been
16  appointed?
17       **MR. SWEET:**  No, Your Honor, I think that makes sense.
18       **THE COURT:**  All right.  Well, exclude 21 days?  Would
19  that be sufficient, Mr. Hermansen?
20       **MR. HERMANSEN:**  Yes, Your Honor.
21       **THE COURT:**  I'll exclude 21 days in which to invoke and
22  request a preliminary hearing, and Mr. -- Mr. Ferguson, if
23  you're not a U.S. citizen, you have the right to ask the
24  government's attorney or a federal law enforcement official to
25  contact a consular office from your country of nationality to

1  let them know that you have been arrested.
2      I'm going to ask, Mr. Sweet, for you to outline the
3  maximum exposure to the charges in just a moment.
4      But I do want to advise that pursuant to the Due Process
5  Protections Act, the Court confirms that the U.S. has an
6  obligation -- the United States has an obligation to produce
7  all exculpatory evidence to the defendant pursuant to *Brady v.
8  Maryland* and its progeny and orders it to do so.
9      Failing to do so in a timely manner may result in
10 consequences including, but not limited to, exclusion of
11 evidence, adverse jury instructions, dismissal of charges,
12 contempt proceedings, or sanctions by the court.
13     Mr. Sweet, would you be kind enough to outline the
14 maximum exposure for these charges?
15     **MR. SWEET:** Yes, Your Honor.  For the count of
16 distribution of 50 grams or more of methamphetamine, there is a
17 statutory maximum sentence of life, with a mandatory minimum
18 sentence of ten years in prison for possessing a firearm in
19 violation of the National Firearms Act, which is essentially
20 possessing a short-barrelled rifle.  That has a statutory
21 maximum sentence of ten years in prison.
22     **THE COURT:** All right.  Thank you.
23     On the issue of detention, is the government seeking
24 detention today?
25     **MR. SWEET:** Yes, Your Honor, both as a flight risk and as

1    a danger to the community.  I can elaborate at length, but I'll
2    see what Mr. Hermansen is trying to do at this point today.
3         **THE COURT**:  Mr. Hermansen, how do you wish to proceed
4    with respect to the detention hearing?
5         **MR. HERMANSEN**:  Your Honor, we're requesting that he be
6    released to a residential drug treatment center --
7         **THE COURT**:  Okay.
8         **MR. HERMANSEN**:  -- once a bed is available.
9         **THE COURT**:  Mr. Sweet?
10        **MR. SWEET**:  Thank you, Your Honor.
11        Your Honor, I realize the Court doesn't have the report
12   yet.  I know there was limited period of time to do two of
13   them.  But I would like to outline some of the issues and the
14   government's concerns with Mr. Ferguson.
15        First, Mr. Ferguson has a recent history of failing to
16   appear in multiple pending court cases in Douglas County.  The
17   deputy DA on the cases provided me five separate dates in which
18   Mr. Ferguson has failed to appear, four of them in 2019, the
19   most recent being in October of 2020.  He has two pending
20   failure to appear cases charged.  He has an Attempt to Elude;
21   he has an Unlawful Use of a Weapon, which my understanding is a
22   domestic violence incident involving the discharge of a
23   firearm.
24        Mr. Ferguson just had multiple warrants cleared when he
25   unexpectedly showed up to court in the last few weeks.  No one

1  was expecting him to be there, and so all of his trials were
2  set out.
3         He does still have one pending warrant -- is my
4  understanding from the DA's office -- out of Douglas County.
5         Your Honor, Mr. Ferguson sold a mandatory minimum
6  quantity of methamphetamine to an uncover law enforcement
7  officer.  He also possessed a short-barrelled rifle which he
8  produced and sold.
9         He discussed at length making weapons; he discussed
10 making automatic weapons; he discussed how the firearms he
11 makes are ghost guns, so to speak -- they're not labelled with
12 serial numbers; he discussed how a weapon could be equipped
13 with a silencer and he could facilitate that; and he talks how
14 one of the weapons was built for close combat and that it would
15 go through plates -- as in body-armored plates.
16        When Mr. Ferguson was arrested, Your Honor, he had three
17 pistols on his person -- actually, I think one on his person,
18 two on his backpack -- but he had three pistols with him.
19        He uses methamphetamine on a daily basis, is my
20 understanding.
21        This is a presumption case.
22        And simply, Your Honor, I think Mr. Ferguson, although he
23 does not have convictions, truly has a troubling and disturbing
24 history of failing to appear for court as required.
25        The fact that he lives locally in the community and has a

1 residence doesn't -- doesn't mitigate the fact that he simply
2 hasn't been showing up for court, nor does it change the fact
3 that he's selling mandatory minimum amount of methamphetamine.
4 　　　　And the involvement with firearms is very disturbing.
5 　　　　Your Honor, I think this may be one where I understand
6 the Court will make a ruling today, but, after we have the
7 opportunity to have the report, and after Mr. Ferguson has
8 counsel -- since he wouldn't be available to go to a bed now
9 anyway -- it may be something where additional information from
10 both sides could be provided to the Court, as well, once he has
11 counsel.
12 　　　　Thank you.
13 　　　　**THE COURT:**  Mr. Hermansen?
14 　　　　**MR. HERMANSEN:**  (Inaudible) Mr. Sweet, I wasn't sure if I
15 would go forward with the request for release today.  There's
16 some factors why I think it's appropriate to request release
17 today.
18 　　　　First, his background is he retired from the U.S. Army;
19 he's retired from Roseburg -- being a Roseburg firefighter.  So
20 he has those two retirements.
21 　　　　He has no prior convictions, as was stated.
22 　　　　Although he does have the failures to appear, it sounds
23 like he cleared those up by appearing in court; and so those
24 cases are set out, and he will take care of those cases if
25 released on pretrial.

1          What concerns me most is he is bipolar, he needs to take
2     his meds, and he is a methamphetamine -- he is addicted to
3     methamphetamine, a daily user.
4          And so that's why the recommendation is to be released to
5     drug treatment -- which wouldn't happen for probably a month,
6     given the long waiting list.
7          Most troubling of all is that he has a diagnosis of
8     testicular cancer, and that diagnosis -- and it sounds like
9     he's been using meth steadily for a year and was -- you know,
10    his bipolar kind of needs to be treated with the meds that he
11    was taking, and instead of treating his testicular cancer, I
12    think he's had it for, like, a year and has not treated it and
13    is just avoiding treatment until now.
14         And testicular cancer is highly treatable, Mr. Ferguson.
15    It's highly treatable if it's treated.
16         But if it's not treated and it spreads, we all know
17    happens with cancer.
18         So that's my greatest concern for Mr. Ferguson, is that
19    he should be released to residential drug treatment so that he
20    can take care of his -- take his psych meds, get the drug
21    treatment that he needs.
22         He is a veteran; so he will have access to, you know, VA
23    services, as well, for extended drug treatment.  He was
24    honorably discharged; so he will have all of those services
25    that can be provided to him through the VA for, like, after.

1    I've previously seen, and there's a famous case out of --
2 where a federal prisoner was detained in one of those private
3 prisons run by -- it's CoreCivic now but it used to have a
4 different name, and his testicular cancer went untreated, and I
5 think his family got a lot of money, but he died.
6    So I do know that there's a da- (inaudible), and that's
7 why Your Honor, I think it would be appropriate to release him
8 to residential drug treatment.
9    Thank you.
10    **THE COURT:**  You're welcome.
11    Mr. Sweet.
12    **MR. SWEET:**  Thank you, Your Honor.
13    Your Honor, while it's certainly unfortunate to hear
14 Mr. Ferguson's cancer diagnosis, he would get treatment while
15 he's detained, either at Sheridan or wherever else, and it
16 sounds like he would get much more treatment than what he's
17 been doing to date, which is nothing.
18    And while he does have the residence, and the fact that
19 he showed up to court to clear most of his warrants -- but, I
20 understand, not all -- he did not appear in August, October,
21 November, or December of 2019, or October of 2020, and when he
22 continually fails to appear for court, that's the reason why he
23 likely doesn't have any convictions is because he hasn't shown
24 up for court.
25    And so -- and my understanding is that no one was

1    prepared, no one was expecting him to show up when he did a few
2    weeks ago, and so they weren't able to proceed.
3         I think it was a trial status conference for an upcoming
4    trial date, but they ended up kicking it out.
5         It's effectively gumming up the system, Your Honor.
6         But separate from the failure to appear concerns,
7    Your Honor, there are the guns, there are the drugs, and there
8    is the methamphetamine addiction.  That is a very dangerous
9    combination, Your Honor.
10         I think there's every reason to be concerned about his
11   danger to the community and his failure to appear, and we would
12   ask that he remain detained, Your Honor.
13         Thank you.
14         **THE COURT:**  And do I have Mr. -- Officer Stranieri.
15         Are you on this case for pretrial services?
16         **MR. STRANIERI:**  Yes, I am, Your Honor.
17         **THE COURT:**  All right.
18         And did you have -- I'm not sure -- I don't think there
19   was a written report, but do you have any assessment or
20   informal recommendations at this point?
21         **MR. STRANIERI:**  Yes.  Thanks, Your Honor.
22         Right now I would be recommending placement in a
23   residential treatment bed.
24         I share Mr. Sweet's concerns, but what I'm looking at is
25   his prior record starts in 2019, Your Honor, which I'm thinking

1  correlates strongly with his methamphetamine use.
2      You know, the alleged failure to appears are not good,
3  but I feel that he has a serious drug problem and that
4  hopefully residential treatment can address that.
5      **THE COURT:** When is the bed available?
6      **MR. STRANIERI:** Your Honor, I think we're looking one to
7  two months right now --
8      **THE COURT:** Okay.
9      **MR. STRANIERI:** -- because we have a list of a few other
10  defendants that are waiting, and then Mr. Ferguson would be
11  placed on that list as well.
12      **THE COURT:** Okay. Mr. Sweet, anything else that you want
13  me to know in light of the bed-availability issue?
14      I mean, I know -- I have approached similar cases with
15  the idea of working towards trying to get him on the list --
16  somebody on the list for a bed with an opportunity to revisit
17  this issue if more information comes out.
18      Is that something -- do you anticipate more information
19  that you'd be able to present to me that would help me
20  appreciate the concerns about flight risk and danger to the
21  community if you have more time to do that?
22      **MR. SWEET:** Your Honor, I certainly think the government
23  could provide the Court with more statements from Mr. Ferguson
24  regarding manufacturing automatic weapons, silencers, ghost
25  guns, a picture of the weapon, the weapon that he sold; and so

1  I think regarding flight risk I've probably addressed what I
2  have, Your Honor.  But I do think the Court may benefit and be
3  informed by hearing some more as to what Mr. Ferguson said to
4  law enforcement about weapons.
5      **THE COURT:**  And do you have that information available
6  now, or is that something that you would like to address at
7  another scheduled hearing time?
8      **MR. SWEET:**  Your Honor, I mean, I've summarized some of
9  it, you know, in terms of silencer, weapons that could go
10 through ballistic vests, et cetera.  If the Court has heard
11 that and understands that and does not believe that that would
12 impact the Court further, then I don't want to belabor it.  But
13 if it's something where the Court is interested in hearing
14 more, I certainly can provide more direct quotes, I could
15 easily get a picture of the weapon sold to the Court -- it's a
16 short-barrelled rifle, and --
17     But, again, without knowing exactly -- I certainly can
18 provide more, if the Court would appreciate that or be
19 interested in that.
20     **THE COURT:**  Mr. Hermansen, was there anything else you
21 wanted me to know?
22     **MR. HERMANSEN:**  I think I've presented the Court with
23 everything I'm aware of, Your Honor.
24     **THE COURT:**  All right.  I appreciate both of your
25 discussions with me, and, given the representations that the

1  government's made, and both with respect to -- also concerning
2  the nature of the offense and also the prior failures to
3  appear, I do not find that the defendant has carried its -- has
4  rebutted the presumption with respect to detention.
5      I will order detention without prejudice.
6      I think if there's additional information that comes to
7  light that helps shed some more -- shed more light on whether
8  he would not be a danger to the community, that would be
9  something I would be willing to consider, and then I'll be
10 happy to revisit the issue of release for treatment at another
11 time.
12     Do we need to set a joint status report date?
13 **COURTROOM DEPUTY:** Arraignment is set for May 6, 2021, at
14 1:30 P.M., by video conference, before Judge Kasubhai; joint
15 status report is due April 12th, 2021.
16 **THE COURT:** Anything else for the government, Mr. Sweet?
17 **MR. SWEET:** Nothing. Thank you, Your Honor.
18 **THE COURT:** Mr. Hermansen?
19 **MR. HERMANSEN:** No. Thank you, Your Honor.
20 **THE COURT:** Thank you.
21 (Proceedings adjourned at 2:06 P.M.)

CERTIFICATION

I, Kelly Lee Polvi, certify that, pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the audio-recorded remote proceedings held in U.S.A. v. Ferguson, and I further certify that the transcript format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 18th day of March, 2021.

*[signature: Kelly Lee Polvi]*

Kelly Polvi, CSR, RDR, FCRR
Official Court Reporter
United States District Court
District of Oregon, Eugene Division
Wayne L. Morse U.S. Courthouse
405 East Eighth Avenue
Eugene, Oregon, 97401
541.431.4112
kelly_polvi@ord.uscourts.gov